UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 97-6766-Civ (Ferguson/Snow)

LAKER AIRWAYS INC.,    )
    )
    Plaintiff,    )
    )
    v.    )
    )
    )
BRITISH AIRWAYS PLC,    )
    )
    Defendant.    )
    )
_____ )

## MOTION OF DEFENDANT BRITISH AIRWAYS PLC TO DISMISS THE COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

SULLIVAN & CROMWELL
1701 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20006
(202) 956-7500

GREENBERG TRAURIG, P.A.
515 EAST LAS OLAS BOULEVARD
FORT LAUDERDALE, FLORIDA 33302
(954) 765-0500

Attorneys for Defendant
British Airways Plc

John L. Warden
Daryl A. Libow
Joseph J. Matelis

Richard G. Garrett

Of Counsel

October 25, 1999



TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      LAKER'S REMAINING SHERMAN ACT CLAIM
        SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      The Complaint Does Not Allege Conduct
                That Violates Section 2 of the Sherman Act . . . . . . . . . . . . . . . . . . . . . 5

        B.      The Complaint Fails To Allege Facts Demonstrating
                That British Airways Has Monopoly Power . . . . . . . . . . . . . . . . . . . . . 7

        C.      Laker Does Not State a Sherman Act Claim by
                Alleging Harm to Its Own Commercial Interests . . . . . . . . . . . . . . . . . 9

II.     THE COMPLAINT FAILS TO STATE A
        CLAIM UNDER FLORIDA LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    LAKER'S INTERLINING CLAIM SHOULD ALSO BE
        DISMISSED ON GROUNDS OF FORUM NON CONVENIENS . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

CASES

*Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191
(3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 12

*American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569
(11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anthony Distribs., Inc. v. Miller Brewing Co.*, 882 F. Supp.
1024 (M.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328
(1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10

*Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
65 F.3d 1406 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Boczar v. Manatee Hosps. & Health Sys. Inc.*, 731 F. Supp.
1042 (M.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203 (5th Cir.
1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Corporate Travel Consultants, Inc. v. United Air Lines Inc.*,
799 F. Supp. 58 (N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Czeremcha v. International Ass'n of Machinists & Aerospace
Workers*, 724 F.2d 1552 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Dial A Car, Inc. v. *Transportation, Inc.*, 82 F.3d 484 (D.C. Cir.
1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Feldman v. Palmetto Gen. Hosp., Inc.*, 980 F. Supp. 467 (S.D.
Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Florida Monument Builders* v. *All Faiths Mem'l Gardens,*
605 F. Supp. 1320 (S.D. Fla. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Global Discount Travel Servs., LLC* v. *TWA,* 960 F. Supp.
701 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Golden Needles Knitting and Glove Co. Inc* v. *Dynamic Mktg.*
*Enters. Inc.,* 766 F. Supp. 421 (W.D.N.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hennessy Indus. Inc.* v. *FMC Corp.,* 779 F.2d 402 (7th Cir.
1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Illinois ex. rel. Burris* v. *Panhandle E. Pipe Line Co.,*
935 F.2d 1469 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jeter* v. *Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . 11

*Laker Airways, Inc.* v. *British Airways, Plc,* 182 F.3d 843
(11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Levine* v. *Central Florida Med. Affiliates, Inc.,* 72 F.3d 1538
(11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*M.G.B. Homes, Inc.* v. *Ameron Homes, Inc.,* 903 F.2d 1486
(11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Magnin* v. *Teledyne Continental Motors,* 91 F.3d 1424
(11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Malcolm* v. *Marathon Oil Co.,* 642 F.2d 845 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 6

*McGahee* v. *Northern Propane Gas Co.,* 858 F.2d 1487
(11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Metzler* v. *Bear Automotive Serv. Equip. Co.,* 19 F. Supp. 2d
1345 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Monsanto Co.* v. *Spray-Rite Serv. Corp.,* 465 U.S. 752 (1984) . . . . . . . . . . . . . . . . . . 2, 5

*Morales* v. *Trans World Airlines, Inc.,* 504 U.S. 374 (1992) . . . . . . . . . . . . . . . . . . . . . 11

*National Alcoholism Programs* v. *Palm Springs Hosp. Employee Benefit Plan*, 825 F. Supp. 299 (S.D. Fla. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Olympia Equip. Leasing Co.* v. *Western Union Tel. Co.*, 797 F.2d 370 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schuylkill Energy Resources* v. *PP&L*, 113 F.3d 405 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Seagood Trading Corp.* v. *Jerrico, Inc.*, 924 F.2d 1555 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sibaja* v. *Dow Chem. Co.*, 757 F.2d 1215 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 13

*Twin Labs., Inc.* v. *Weider Health & Fitness*, 900 F.2d 566 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*U.S. Anchor Mfg., Inc.* v. *Rule Indus., Inc.*, 7 F.3d 986 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Volmar Distribs., Inc. v. *New York Post Co.*, 825 F. Supp. 1153 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

49 U.S.C. § 1305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## RULES

Federal Rule of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## MISCELLANEOUS

*Continental Airlines, Inc.* v. *American Airlines, Inc.*, DOT Order 95-12-69 (Dec. 24, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 97-6766-Civ (Ferguson/Snow)

| | | |
|---|---|---|
| LAKER AIRWAYS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Motion of Defendant British Airways Plc |
| | ) | To Dismiss the Complaint and |
| | ) | Memorandum of Law in Support |
| BRITISH AIRWAYS PLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

By order dated July 30, 1999, the Eleventh Circuit Court of Appeals affirmed this Court's dismissal of the vast preponderance of the complaint filed by plaintiff Laker Airways Inc. ("Laker"). *Laker Airways, Inc.* v. *British Airways, Plc*, 182 F.3d 843 (11th Cir. 1999). Defendant British Airways Plc ("British Airways") submits this Memorandum of Law in support of its motion to dismiss Laker's remaining claim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

PRELIMINARY STATEMENT

It is indisputable that the gravamen of Laker's plaint was its inability to obtain "commercially desirable" slots at London's Gatwick Airport. Following the

Eleventh Circuit's affirmance of the dismissal of *all* of Laker's claims relating to the award of slots, all that remains of Laker's complaint is the allegation — mentioned only twice in a 37-paragraph, 18 page complaint (*see* ¶¶ 10, 19) — that British Airways unilaterally declined to enter into "an interline ticketing and baggage agreement" with Laker. (¶ 19.)[1]  Laker's claim, however, manifestly fails to state a claim under the Sherman Act.

First, the *sine qua non* of a claim under Section 2 of the Sherman Act is *anticompetitive use* of *monopoly power*.  The allegations of the complaint, even taken as true, establish neither that British Airways possesses monopoly power nor that British Airways unlawfully acted to exercise such power to exclude Laker from any relevant market.  Simply, it is a basic tenet of federal antitrust law that British Airways, like any company, is free "to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984).  In addition, federal antitrust law protects "*competition*, not *competitors*." *Atlantic Richfield*

---

[1]      Laker purports to have filed an "amended complaint" on October 15, 1999.  In light of this Court's previous dismissal of Laker's complaint and Laker's failure to obtain either leave of the Court or consent of British Airways to file an amended pleading, Laker's filing of an "amended complaint" is improper and procedurally barred.  *See Czeremcha* v. *International Ass'n of Machinists & Aerospace Workers*, 724 F.2d 1552, 1556 (11th Cir. 1984) ("we find it appropriate to adopt the rule that after a complaint is dismissed the right to amend under Rule 15(a) terminates").

In any event, the only additional factual recital contained in Laker's new "pleading" relevant to interlining is the admission that British Airways did in fact enter into an interline agreement with Laker but that its terms were not "reasonable." (*See* 10/15/99 "Am. Compl." ¶ 20.)  This admission not only fails to cure the defects in Laker's claim, it exacerbates them.  Thus, each argument presented herein for dismissal of Laker's interline claim applies with equal if not greater force to the purported amended complaint.

*Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 338 (1990).  Because Laker fails to allege harm to competition transcending injury merely to itself, Laker simply does not have standing to bring a claim under Section 2 of the Sherman Act.

Moreover, Laker's complaint fails to set forth a valid state law claim. First, Florida's deceptive trade practice statute, which protects consumers from deceptive and anticompetitive practices, does not apply to claims by commercial competitors. Second, even if the statute did purport to reach such disputes, because Laker's claim indisputably relates to "airline services," it is preempted by federal law.

Finally, dismissal of Laker's interline claim is also appropriate on grounds of forum non conveniens because Laker's purported claim relates only to passengers seeking to switch planes in the United Kingdom to travel to points beyond London. Accordingly, this forum's connection with the claim is remote and superficial, and the United Kingdom is the more appropriate forum for adjudication.

## PROCEDURAL BACKGROUND

Laker's complaint, filed on June 26, 1997, reflected Laker's apparent dissatisfaction with the way the United Kingdom administered the allocation of take-off and landing "slots" at Gatwick Airport in London.  Laker's complaint alleged, *inter alia*, that British Airways had "conspired" with the U.K. Government's designated slot coordinator, Airport Coordination Ltd. ("ACL"), to monopolize the Miami-London air services "market" in violation of Sections 1 and 2 of the Sherman Act and Florida state law.  Citing "both a procedural and substantive defect" (11/26/97 Order at 4), this Court

dismissed Laker's action (1) for failure to join ACL, which this Court determined to be a party "needed for just adjudication without which complete relief could not be granted" pursuant to Federal Rule of Civil Procedure 19, (*id.* at 5), and (2) pursuant to the "substantive act of state doctrine," (*id.*). Accordingly, the Court did not reach British Airways' separate argument that each of Laker's claims failed as a matter of substantive antitrust law as well. (*See* Def.'s 7/15/97 Mot. Dismiss at 9-18.) Subsequently, this Court vacated, and then, following additional briefing on issues related to Rule 19, reinstated, its original order of dismissal.

On appeal, the Eleventh Circuit affirmed this Court's dismissal of *all* of Laker's claims relating to the allocation of slots. The Eleventh Circuit observed, however, that Laker had also alleged that British Airways had "improperly refused to enter into interline ticketing and baggage agreements with Laker" and that as this claim did not involve ACL it was barred neither by Rule 19 nor the act of state doctrine. *Laker,* 182 F.3d at 850. Consequently the Eleventh Circuit remanded Laker's sole remaining claim involving interline ticketing. In doing so, the Eleventh Circuit expressly noted that it was implying "no view about whether the interline portion of the complaint may be subject to dismissal" on other grounds. *Id.* at 850. The effect of the Eleventh Circuit's disposition was to reinstate Counts III and VI of the complaint insofar as they pertain to British Airways' alleged refusal to interline with Laker and otherwise affirm the dismissal

of the complaint.[2] In this motion, British Airways reasserts the alternative grounds for dismissal that were set forth in its prior motion to dismiss: namely, Laker's allegations regarding interlining do not state a claim upon which relief can be granted under federal or state law.

## ARGUMENT

### I.   LAKER'S REMAINING SHERMAN ACT CLAIM SHOULD BE DISMISSED.

A.   The Complaint Does Not Allege Conduct
That Violates Section 2 of the Sherman Act.

Though Laker's complaint asserts in conclusory terms that "to compete effectively in the Miami-London market," Laker must consummate an interline passenger and ticketing agreement with British Airways (Compl. ¶ 10), it is well settled that a company "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). This precept remains true even in the case of a company possessing monopoly power, which, as discussed below, Laker's complaint fails adequately to allege. Even "[a] monopolist has . . . no duty to extend a helping hand to new entrants." *Olympia Equip. Leasing Co.* v. *Western Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986). British Airways "needn't acquiesce to every demand placed upon [it] by competitors." *Illinois*

---

[2]   The alleged conspiracy underlying Counts I, II, and V concerned the allocation of slots at London's airports and does not implicate Laker's interline claim. Likewise, this Court's dismissal of Court IV, which purported to cast British Airways' slots at Gatwick airport as an essential facility, was also affirmed by the Eleventh Circuit.

*ex. rel. Burris* v. *Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1484 (7th Cir. 1991).  *See also Malcolm* v. *Marathon Oil Co.*, 642 F.2d 845, 860 (5th Cir. 1981) (general rule is that a "unilateral refusal to deal is not unlawful").

Simply, the notion that an alleged decision by British Airways not to "interline" with Laker — even if true, which it is not[3] — could support a Section 2 claim is ridiculous.  Not only does the law expressly permit British Airways freedom to "interline" with those carriers it believes commercially beneficial or appropriate, but the absence of such an interline agreement does not serve to exclude Laker from any "market."  By Laker's own admission, such an agreement would merely obviate the inconvenience of "issu[ing] two tickets to its passengers" connecting on flights to other destinations as well the necessity for passengers connecting in London to check their luggage separately with British Airways.  (Compl. ¶ 19).  Invoking the antitrust laws in an attempt to achieve these benefits at the expense of another's commercial freedom is not only inappropriate, *Seagood Trading Corp.* v. *Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) (equipping a plaintiff with a defendant's competitive advantage "not a function of the antitrust laws"), but legally barred.  *See Twin Labs., Inc.* v. *Weider Health &*

---

[3]      While, for purposes of this motion, the veracity of Laker's allegation that British Airways "has refused to enter into an interline ticketing and baggage agreement with Laker," (Compl. ¶19), must be assumed, that allegation is disingenuous.  At oral argument before this Court on July 17, 1997, less than one month after the filing of the verified complaint, Laker's own counsel admitted that British Airways indeed had offered to interline with Laker if it would provide a bank guarantee but that Laker instead sought more favorable terms.  (7/17/97 Tr. at 22 (attached as Annex A).)  Laker's purported "amended complaint" (*see* ¶ 20) contains a similar admission.

-6-

*Fitness*, 900 F.2d 566, 570 (2d Cir. 1990) ("plaintiff must show more than inconvenience, or even some economic loss"); *Global Discount Travel Servs., LLC* v. *TWA*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) (as a matter of law, denial of tickets on TWA flights not cognizable as an antitrust harm).[4]

B.     The Complaint Fails To Allege Facts Demonstrating
       That British Airways Has Monopoly Power.

In addition to failing to allege any proscribed conduct, the remaining Section 2 claim must also fail as a matter of law due to Laker's failure to allege that most fundamental to a "monopolization" claim: the existence of requisite monopoly power. "Proof of monopoly power in the relevant market is the first element of a monopolization claim . . . ." *Levine* v. *Central Florida Med. Affiliates, Inc.*, 72 F.3d 1538, 1556 (11th Cir. 1996); *Hennessy Indus. Inc.* v. *FMC Corp.*, 779 F.2d 402, 404 (7th Cir. 1985) (Section 2 claim "defective because it makes no allegations as to defendants' market power"); *Cliff Food Stores, Inc.* v. *Kroger, Inc.*, 417 F.2d 203, 208 (5th Cir. 1969) (Section 2 claim properly dismissed due to lack of monopoly power); *Metzler* v. *Bear Automotive Serv. Equip. Co.*, 19 F. Supp.2d 1345, 1363 (S.D. Fla. 1998) (Section 2 claim requires allegations of "'the possession of monopoly power in the relevant market'"); *Boczar* v. *Manatee Hosps. & Health Sys. Inc.*, 731 F. Supp. 1042, 1046 (M.D. Fla. 1990) (dismissing claim when "complaint demonstrates that [defendant] does not actually

_____

[4]     The Department of Transportation has similarly concluded that a carrier has no general "obligation" to interline with its competitors. *See Continental Airlines, Inc.* v. *American Airlines, Inc.*, DOT Order 95-12-69 (Dec. 24, 1985) (despite 67% share of traffic carrier not obligated to interline with other competitors).

monopolize").  "The principal measure of actual monopoly power is market share . . . ."
*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 999 (11th Cir. 1993); *McGahee v.
Northern Propane Gas Co.*, 858 F.2d 1487, 1505 (11th Cir. 1988) ("best test" of market
power is "market share").

   Although Laker makes the conclusory allegation that British Airways has
monopolized the market for "air passenger service between Miami and London"
(Compl. ¶ 26), the complaint is barren of any supporting factual allegations.  Laker
simply assumes a "market" confined to the share of slots available during the supposed
commercially "desirable" hours of operation, (Compl. ¶ 15), in a transparent effort to
inflate the market share ascribed to British Airways.  But even if "desirable slots" could
suffice as a cognizable antitrust market, the complaint still alleges only that British
Airways and its subsidiaries "control[] . . . approximately 46% of the summer 1997 slots
at Gatwick."  (Comp. ¶ 15.)  "Fifty percent is [however] below any accepted benchmark
for inferring monopoly power from market share."  *Blue Cross & Blue Shield United* v.
*Marshfield Clinic*, 65 F.3d 1406, 1411 (7th Cir. 1995) (citations omitted).  The Eleventh
Circuit "ha[s] discovered no cases in which a court found the existence of actual
monopoly established by a bare majority share of the market."  *U.S. Anchor*, 7 F.3d at
1000 ("as a matter of law" 50% of market cannot even support a claim for *attempted*
monopolization).  Accordingly, Laker fails to state a claim for monopolization based on
British Airways' alleged refusal to interline or otherwise.

-8-

C.   Laker Does Not State a Sherman Act Claim by
     Alleging Harm to Its Own Commercial Interests.

Although Laker describes itself as an aggrieved competitor, "[t]he antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'" *Atlantic Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (internal quotation omitted). "Harm to competition is a necessary element of all private antitrust suits under Sections 1 and 2 of the Sherman Act." *American Key Corp.* v. *Cole Nat'l Corp.*, 762 F.2d 1569, 1579 n.8 (11th Cir. 1985). While the complaint includes an allegation regarding Laker's purported difficulties in the absence of an interline agreement with British Airways (*see* Compl. ¶¶ 35, 19), it does not "allege facts that would show an anticompetitive impact on the market as a whole." *Dial A Car. Inc.* v. *Transportation. Inc.*, 82 F.3d 484, 486 (D.C. Cir. 1996). "While [Laker] alleges injury to itself, that injury involves only one specific competitor and is insufficient to support . . . that the market as a whole is or will be injured." *Id.* at 487. *See also Schuylkill Energy Resources* v. *PP&L*, 113 F.3d 405, 413 n.6 (3d Cir. 1997) ("'injuries to an individual competitor company, without allegations of injury to competition or consumer welfare, are insufficient as a matter of law to establish a violation of federal antitrust law'"); *Anthony Distribs., Inc.* v. *Miller Brewing Co.*, 882 F. Supp. 1024, 1030 (M.D. Fla. 1995) ("To state a claim for anti-trust violations, the complaint must allege that the [defendant's] activity will significantly restrict competition in the product's marketplace . . . . [M]ere injury to oneself as a competitor is insufficient."); *Florida Monument Builders* v. *All Faiths Mem'l Gardens*, 605

-9-

F. Supp. 1320, 1323 (S.D. Fla. 1984) (complaint fails to state antitrust claim by alleging "injury or loss of income by a plaintiff without . . . injury to competition in the market").[5]

Laker's generalized and conclusory assertion that the defendant's acts have "restrained competition in [the London-Miami] market to the detriment of not only Laker but the consuming public generally" (Compl. ¶¶ 22, 24, 26, 30), is wholly insufficient. *See Atlantic Richfield Co.*, 495 U.S. at 339 n.8 ("antitrust injury requirement cannot be met by broad allegations of harm to 'the market' as an abstract entity"). Complaints based on such generalized allegations are regularly dismissed. *See, e.g., Feldman* v. *Palmetto Gen. Hosp., Inc.*, 980 F. Supp. 467, 469 n.6 (S.D. Fla. 1997) (dismissing complaint alleging that a "conspiracy restrains trade . . . by eliminating an economic competitor" thereby creating "public injury to competition"); *Volmar Distribs., Inc.* v. *New York Post Co.*, 825 F. Supp. 1153, 1160 (S.D.N.Y. 1993) (dismissing complaint alleging "defendants' conduct" "designed to drive plaintiffs out of the relevant market" plus "naked assertion that consumers and retailers" "have been and will be deprived of the benefits of competition by defendants' actions").

---

[5]     Indeed, "[e]ven 'the elimination of a single competitor, standing alone, does not prove anticompetitive effect.'" *Austin* v. *McNamara*, 979 F.2d 728, 739 (9th Cir. 1992) ("'injury to competition *beyond the impact on the claimant*'" required). "The Supreme Court has observed that driving a competitor out of business may do no more than allow a new entrant to buy up the idled physical and human capital at bargain prices." *Advo, Inc.* v. *Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1200 (3d Cir. 1995) (citations omitted).

II.   THE COMPLAINT FAILS TO STATE A
      CLAIM UNDER FLORIDA LAW.

Laker's resort to the Florida Deceptive and Unfair Trade Practices Act is frivolous.  Laker has no claim under the statute because it "does not apply to suits between competitors."  *M.G.B. Homes, Inc.* v. *Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990).  Nor does the Florida Act apply to "sophisticated commercial transactions," *see Golden Needles Knitting and Glove Co. Inc.* v. *Dynamic Mktg. Enters. Inc.*, 766 F. Supp. 421, 430 (W.D.N.C. 1991) (applying Florida statute), because it was intended only to protect "unsophisticated consumers," *see Jeter* v. *Credit Bureau, Inc.*, 760 F.2d 1168, 1172 (11th Cir. 1985).  S*ee also National Alcoholism Programs* v. *Palm Springs Hosp. Employee Benefit Plan*, 825 F. Supp. 299, 302 (S.D. Fla. 1993) (Section 501.204  "[d]esigned to protect consumers from suppliers who commit deceptive trade practices").

What is more, even if Laker had stated a viable claim under the Florida statute, the claim would be preempted by the Airline Deregulation Act, 49 U.S.C. § 1305(a) (no state "shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier").  Section 1305(a) has a broad pre-emptive effect by  preempting all "[s]tate enforcement actions having *a connection with,* or reference to, airline 'rates, routes, or services.'"  *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (emphasis added).  Plaintiff's deceptive trade practices claim, which rest on the allegation that British Airways has harmed Laker's ability to provide "convenient" service to its

-11-

passengers flying the London-Miami route by allegedly refusing to enter into an interline agreement with Laker, integrally relates to airline *services* and is consequently preempted.  *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 227-28 (1995) (preempting claims that frequent flyer program violated state Consumer Fraud and Deceptive Business Practice Act); *Corporate Travel Consultants, Inc.* v. *United Air Lines Inc.*, 799 F. Supp. 58, 61-62 (N.D. Ill. 1992) (finding that "the Airline Deregulation Act of 1978 preempts the [state] Antitrust Act, because plaintiff's cause of action relates to rates").

### III.   LAKER'S INTERLINING CLAIM SHOULD ALSO BE DISMISSED ON GROUNDS OF FORUM NON CONVENIENS.

Dismissal of Laker's remaining interlining claim is also warranted on grounds of forum non conveniens.  In assessing whether a complaint should be dismissed for forum non conveniens, a court must first determine if an adequate alternative forum exists and then apply a balancing test involving both "private"and "public" interests.  *See, e.g., Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 241 n.6 (1981); *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 506-09 (1947).

First, the United Kingdom is an adequate alternative forum.  British Airways is amenable to process in the United Kingdom, and the United Kingdom's courts would entertain an action similar to this one:  Article 86 of the European Community's Treaty of Rome serves as the European analogue to Section 2 of the Sherman Act. Second, both private and public interests heavily favor dismissal.  Laker's remaining interlining claim only relates to passengers seeking to switch flights at London's Gatwick

Airport to points beyond London.  The United States' connection to this action is thus remote and superficial, and dismissal on forum non conveniens grounds is consequently appropriate.  *See Magnin* v. *Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) (claim involving foreign witnesses imposed a "heavy burden" on both the court and the defendant justifying invocation of forum non conveniens doctrine); *Sibaja* v. *Dow Chem. Co.*, 757 F.2d 1215, 1217 n.5 (11th Cir. 1985) (doctrine applicable where claim required local jurors "to hear and decide a dispute that has no connection with this community").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the remainder of the Complaint.

Respectfully submitted,

Daryl A. Libow
Sullivan & Cromwell
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
phone:  (202) 956-7500
fax:  (202) 293-6330
email:  LibowD@SullCrom.com

Richard G. Garrett
(Florida Bar No. 268161)
Greenberg Traurig, P.A.
515 East Las Olas Blvd.
Fort Lauderdale, Florida 33302
phone:  (954) 765-0500
fax:  (954) 765-1477
email:  GarrettR@GTlaw.com

John L. Warden
Joseph J. Matelis

Of Counsel

October 25, 1999

Attorneys for Defendant
British Airways Plc

-13-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Motion of Defendant British Airways PLC To Dismiss the Complaint and Memorandum of Law In Support was sent via facsimile and Federal Express to Robert M. Beckman, Esq., BODE & BECKMAN, L.L.P., 1150 Connecticut Avenue, N.W., 9th Floor, Washington, D.C. 20036-4192 and via facsimile and U. S. Mail to Dwight Sullivan, Esq., 14 Northeast First Avenue, Suite 1205, Miami, FL 33132 this 25th day of October, 1999.

RICHARD G. GARRETT

MIAMI3 GARRETTR 117503 2Snz01 DOC 10/25/99

-14-

ANNEX A

1   not contest that British Airways does business in this

2   jurisdiction.  This is an antitrust case.  British Airways

3   is the dominant carrier on the Miami London route.

4          Laker tries to enter in March of 1997, to enter

5   into competition, Laker needs interlining arrangements with

6   British Airways because British Airways is the largest

7   airline in Europe.

8          When Lakers passengers gets to Gatwick, there is a

9   complex of flights at Gatwick by British Airways going all

10  over Europe and beyond.  They need to be able to have an

11  interlining arrangement.

12         THE COURT:  That seems to be something different.

13  The interlining or interline agreement seems to be

14  different from obtaining the commercially desirable slots,

15  and they have to be addressed differently or separately.

16         What is the authority for the Court to compel

17  such agreements between the private carriers?

18         MR. BECKMAN:  I will tell you, Your Honor.  We

19  say we have alleged, we have supported our allegation in a

20  verified complaint, that Your Honor has sworn testimony for

21  actions for preliminary injunction.  Then we don't ask for

22  all the relief.  We just want the ability to compete

23  effectively this summer.  That is all we want right now

24  from this Court.

25         It's the interline arrangement is easy.  What you

1   have in the affidavit that has been submitted by British

2   Airways Peter owns.  He says British Airways has already

3   agreed to a one way agreement with Laker, which means that

4   British Airways can sell its passengers to travel over

5   Lakers flights, and it is prepared to enter into a two way

6   agreement as long as there is a bank guarantee.

7          Laker has already in writing offered a bank

8   guarantee of an amount that Laker thought would be

9   appropriate, $25,000.  British Airways responded, asked

10  some questions.  Did not say the $25,000 was wrong or was a

11  problem, but we ask Your Honor to help the passengers and

12  the tourist industry this summer, right now, so they can

13  have the facility available that British Airways makes

14  available to all its other competitors.  Every

15  international traveler expects it.

16         I should respectfully suggest Your Honor has full

17  authority to act in the public interest, to prevent

18  irreparable injury to the travel public; where there is a

19  clear exclusionary tactic that impairs seriously Lakers

20  ability to compete in this market, to just simply say this

21  Court directs that British Airways will enter into the

22  interline arrangements made available to its competitors

23  subject to the condition that Laker provides with the

24  appropriate institution, a bank guarantee of $25,000 or

25  such other amount as this Court deems appropriate.  That is

1   something that can be done and should be done and promptly.

2           On the matter of the slots; again, Your Honor,

3   what is required is simply that British Airways sits down

4   under the direction of this Court and enters into a simple

5   slot.

6           I might tell you, Your Honor, on this subject,

7   this is not uncommon to introduce to mediation, the

8   Attorney General of Florida, the Honorable Robert

9   Butterworth has already communicated with both parties,

10  with Laker and British Airways expressing the concern of

11  the Attorney General about the affect on tourism in Florida

12  and on the passengers, and has requested the parties to

13  meet with the highly respected Miami attorney Parker

14  Thompson for mediation.

15          British Airways met with Mr. Thompson for

16  sometime on Tuesday.  Laker has been in communication with

17  Mr. Thompson, and I would respectfully suggest Your Honor

18  direct the parties to retire from this Court courtroom at

19  such time that is as convenient to the parties, meet with

20  the mediator.  The Attorney General has offered his good

21  services to be involved through his representatives in the

22  mediation and effect a stock swap.

23          If the matter can't be resolved then we should

24  come back to Your Honor, but we are in a situation, and I

25  am not exaggerating it, with half the traffic denied Laker,

1   Lakers loads are not breaking even.  Lakers survival is at
2   stake.  The passengers who go on Laker are subjected to the
3   indignity of when they get to London's Gatwick Airport,
4   they have to collect their bags.  They have to carry it to
5   the British Airways terminal counter.  They have to check
6   it in, and then they have to get another ticket in their
7   hands.  Every other passenger in the world just goes down
8   and has a cup of coffee because his baggage is taken
9   through the system in the airport.

10          This case is so easily resolved in the interest
11   of the passengers, in the interest of the tourism that is
12   vital to the State of Florida, that I think that I ought to
13   leave the podium unless Your Honor has any questions of me
14   and let Mr. Dickey respond to what I think are very
15   sensible nd immediate suggestions to provide the relief.
16   No way prejudices the ends of the case but helps the
17   passengers.

18          THE COURT:  The second half of the problem that
19   is the obtaining the commercially desirable slots, it seems
20   to me that you have offered to suggest British Airway has
21   the power or the ability to change the ACL's allocations
22   into such a presumption.

23          MR. BECKMAN:  Let me put Your Honor's mind at
24   rest on that.  The chairman of ACL is Richard Wyatt,
25   general manager of British Airways, the coordinator is a