IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

|  |  |
|---|---|
| LAKER AIRWAYS INC<br><br>Plaintiff,<br><br>v.<br><br>BRITISH AIRWAYS PLC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 97-6766-CIV-FERGUSON<br>) Magistrate Judge Snow<br>)<br>)<br>)<br>)<br>) |

NIGHT BOX
FILED

NOV.— 8 1999

CARLOS JUENKE
CLERK, USDC / SDFL / FTL

PLAINTIFF'S OPPOSITION TO DEFENDANT
BRITISH AIRWAYS' MOTION TO DISMISS

Introduction

BA's filing of its Motion to Dismiss, limited to the interline claim, alongside its Motion to Strike the Amended Complaint is nothing more than a transparent attempt to have this Court address plaintiff's claims seriatim. Courts adjudicating antitrust cases are prohibited from examining plaintiffs' claims as if they are "completely separate and unrelated lawsuits." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962). *See also Caldera, Inc. v. Microsoft Corp.*, No. 2:96-CV-645B, slip op. at 26-29 (D. Utah Nov. 3, 1999). As the Supreme Court remarked in *Continental Ore Co.*: "The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Id.* at 699. "In cases such as this, plaintiffs should be given the full

benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Id.* at 699.

In this case, Laker is entitled to have its slot allocation and interline claims reviewed together as both allegations are components of the alleged antitrust conspiracy. Accordingly, Laker refers the Court to the record in its entirety and in particular to the Amended Complaint and to Laker's Opposition to British Airways Motion to Strike, both of which set forth in detail Laker's slot allocation claim and interline claim.

### Procedural Background

Laker Airways Inc. ("Laker") filed a complaint on June 26, 1997, seeking damages and injunctive relief against British Airways Plc. ("BA"). The gravamen of Laker's complaint was BA's anticompetitive behavior in combining to restrain and monopolize scheduled passenger air service between Miami to London. Laker alleged BA did this by refusing to enter into interline agreements with Laker and by preventing Laker from acquiring competitive slots at Gatwick, so that Laker was unable to compete in the Miami to London market.

Upon BA's motion, this court dismissed Laker's entire complaint pursuant to Fed. R. Civ. P. 19, for failure to join Airport Coordination Limited

("ACL"), which this court determined to be indispensable to Laker's claims relating to anticompetitive conduct regarding slot allocation; this court further held that if ACL were joined Laker's claim would be barred by the act of state doctrine.[1] Laker noted an appeal of the order dismissing its complaint.

After noting an appeal, Laker became aware of a Diplomatic Note of the UK, in which the UK disclaimed sovereign responsibility for slot allocation. Laker filed a motion under Fed. R. Civ. P. 60, attempting to bring the Note to this Court's attention, but this Court refused to consider the Note's effect. Laker then noted an appeal of this court's denial of Laker's Rule 60 motion.

On appeal, the Court of Appeals held that this court did not abuse its discretion in dismissing Laker's claims relating to slot allocation for failure to join ACL, because it determined that ACL was necessary (Opinion at 7-10), and that the factors contained in Fed. R. Civ. P. 19(b) favored dismissal of the action if ACL is not joined. Opinion at 10-13. The Court of Appeals did not reach the issue of whether suit against ACL would be barred by the act of state doctrine. *Id.* at 15. It further held that Laker's appeal of this court's

---

[1]

    This court vacated its order dismissing Laker's complaint, upon Laker's request for additional briefing on Fed. R. Civ. P. 19 issues, but reinstated the order of dismissal after additional briefing.

denial of the Rule 60 motion was moot, as the appellate court did not reach the act of state issue. *Id.* The Eleventh Circuit reinstated the balance of Laker's complaint. *Id.* at 16.

On October 15, 1999, Laker filed an Amended Complaint. Laker has cured this defect by joining ACL. The Amended Complaint makes allegations that unquestionably demonstrate that ACL's actions are not the acts of a sovereign. See Amended Complaint ("Amend. Compl.") ¶¶ 3, 14. The Amended Complaint adds significant allegations on the inadequacy of the interline agreement that BA offered Laker to remedy the anticompetitive effect of BA's actions. See Amend. Compl. ¶¶ 11, 20, 21.

## ARGUMENT

A motion to dismiss on 12(b)(6) grounds "is viewed with disfavor and rarely granted." *Vernon v. Medical Mgt. Assoc. of Margate, Inc.*, 912 F. Supp. 1549, 1553 (S.D. Fla. 1996). "This is especially true in antitrust cases." *KWF Indus. v. AT&T Co.*, 592 F. Supp. 795, 797 (D.D.C. 1984). See also *Hospital Bldg. Co. v. Trustee of Rex Hospital*, 511 F.2d 678, 680 (4th Cir. 1975), *rev'd on other grounds*, 425 U.S. 738 (1976). In evaluating the sufficiency of a claim, "all facts stated in the complaint are accepted as true, all factual issues are to be resolved in favor of the plaintiff, and the prospect of recovery is irrelevant." *Tevini v. CHC Int'l, Inc.*, 946 F. Supp.

5

985, 987 (S.D. Fla. 1996) (citations omitted).  Then, only if, "on a
dispositive issue of law, no construction of the factual allegations will
support the cause of action" may a court dismiss a complaint.  *Nussbaum v.
Mortgage Serv. Am. Co.*, 913 F. Supp. 1548, 1553 (S.D. Fla. 1995)
(citations omitted).  *See also Vernon*, 912 F. Supp. at 1554 ("The pleadings
must show, in short, that the plaintiff has no claim before the 12(b)(6)
motion may be granted.")  Finally, "[a] complaint may not be dismissed
because the plaintiff's claims fail to support the legal theory he relies upon
since the court must determine if the allegations provide for relief on any
possible theory." *Id.  See also Irizarry v. Palm Springs Gen. Hosp.*, 657 F.
Supp. 739, 740 (S.D. Fla. 1986) ("[I]t is sufficient if it shows that the
plaintiff is entitled to any relief which the court can grant, regardless of
whether it asks for the proper relief.").

Construing Laker's Complaint liberally to discern if Laker has alleged
any basis for relief, as the Court must do, *see Conley v. Gibson*, 355 U.S.
41, 45-57 (1957), it is plain that Laker has well-pled antitrust violations.
Laker's complaint makes clear that the acts of BA and ACL were in
furtherance of their agreement to eliminate Laker's competition and to enable
BA to maintain monopoly power over the relevant passenger service market.
Laker's complaint well-pleads injury to competition generally and to
consumers.

I      Laker's Monopolization Claims Are Well-Pleaded

Although it is stated that a company "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984), it is well settled that a firm's right to refuse to deal is not absolute but qualified. *See Eastman Kodak Co. v. Image Technical Services*, 504 U.S. 451, 483 n.32 (1992). Indeed, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), *Eastman Kodak Co. v. Image Technical Services*, 504 U.S. 451 (1992), and their progeny importantly qualify the general rule that there is no duty to help competitors. *See also Florida Fuels Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528, 1532 (S.D. Fla. 1989). Under this line of cases, monopolists who refuse to deal with their competitors with the purpose and effect of excluding competition and without a valid business justification may be found liable under Section 2 of the Sherman Act.[2]

---

2

Additionally, under the essential facilities doctrine "a monopolist may not foreclose use of a scarce facility, but must share on fair terms." *Florida Fuels Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528; 1532 (S.D. Fla. 1989); *see also MCI Communications Corp. v. AT&T*, 708 F.2d 1081. 1132 (7th Cir.), *cert. denied*, 464 U.S. 891 (1983). The four elements of an essential facilities claim are: (1) control of the essential facility by a monopolist; (2) a competitor's inability, practically or reasonably, to duplicate the essential facility; (3) the denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility. *Florida Fuels, Inc.* 717 F. Supp at 1532.

Laker has adequately alleged that BA's refusal to swap slots and interline with Laker gives rise to a Section 2 claim under the essential facilities doctrine because slots and interline agreements are essential to

7

In this case, Laker alleges that BA has monopoly power in the Miami-London air passenger services market, and that BA refused to enter into reasonable interlining agreements with Laker in an effort to exclude Laker and competition generally from this market.[3]  Amend. Compl. ¶¶ 20, 25, 26. Assuming the truth of these factual allegations, as this Court must when considering a motion to dismiss, Laker's monopolization claims are clearly well-pleaded.

Nevertheless, BA argues that the absence of an interline agreement does not serve to exclude Laker from any market.  BA Motion to Dismiss at 6.  BA's argument, however, is both improper and inaccurate.

Whether or not the absence of an interline agreement served to exclude Laker – and competition generally – from the relevant market is an issue of fact.  Laker has so alleged and the Court must accept the truth of

---

competing effectively in the Miami-London market, and there was no valid business reason for their denial.  Amend. Compl. ¶¶ 28, 29, 30, 31.

[3]

BA misrepresents that it "offered to interline with Laker if Laker would provide a bank guarantee."  BA Motion to Dismiss at 6 n.3.  While BA offered to interline with Laker, it did so on the condition that Laker agree to pay BA excessive and unreasonable amounts for BA's share of the thoroughfare – in essence, making "an offer that [Laker] could not accept." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 592 (1985).  Such commercially unreasonable offers do not relieve BA of liability. *See id.*

8

this factual allegation. Moreover, as Laker has repeatedly explained, although interline agreements provide an added "convenience" for air passengers, they are not a matter of "convenience" for airlines. To the contrary, they are a matter of economic viability because absent such an agreement, airlines are unable to offer the competitive services and prices necessary to attract customers. Plainly, passengers will eschew an airline that does not offer the facility of checking baggage through to a connecting flight and an airline cannot compete if it gives away most of the passenger's total fare to the connecting carrier.

In this respect, this case closely resembles *Aspen Skiing Corp. v. Aspen Skiing Co.*, 472 U.S. 585 (1985). In that case, the defendant controlled three of four skiing mountains in the Aspen area and the plaintiff controlled the fourth mountain. The defendant refused to cooperate with the plaintiff to offer skiers a multi-day multi-mountain skiing experience and instead offered a similar pass limited to the three mountains controlled by defendant. Plaintiff, who only controlled one mountain gradually lost market share because it was unable to offer a competitive pass.

In an opinion that has become a cornerstone in antitrust law, the Supreme Court remarked: "If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as

9

predatory." *Id.* at 605 (quoting R. Bork, The Antitrust Paradox 160 (1978). The Court went on to hold that defendant's conduct was predatory, remarking that "Ski Co. [had] elected to forgo [the] short-run benefits [of a joint ski pass] because it was more interested in reducing competition in the Aspen market over the long run by harming its smaller competitor." *Id.* at 608. Moreover, Ski Co. had failed to provide "any efficiency justification whatever for its pattern of conduct." *Id.*

The analogy between *Aspen Skiing Co.* and this case is striking. Like the defendant in *Aspen Skiing Corp.,* British Airways has chosen to forgo the short term benefits of entering into an appropriate interline agreement with Laker because it is more interested in reducing competition in the Miami-London market over the long run by harming Laker, a smaller competitor. Also like the defendant in *Aspen Skiing Co.,* British Airways has not offered the Court an efficiency justification for its conduct. Finally, the analogy to *Aspen Skiing Co.* resonates because the plaintiff was the defendant's sole competitor in the relevant market and its ability to compete was undercut as a result of defendant's conduct. Indeed, in our case, British Airways' refusal to cooperate with Laker (the sole airline in the market without access to Heathrow) has effectively driven Laker out of the Miami-London market. Amend. Compl. ¶ 19.

In essence, BA's representation that the lack of an interline agreement merely "inconveniences" Laker is a gross mischaracterization. In any event, it is a factual mischaracterization and as such, it has no place in defendant's motion to dismiss.

## II.    Laker Alleges That BA Has Monopoly Power

BA argues that dismissal of Laker's Section 2 claim is justified by "Laker's failure to allege that most fundamental to a 'monopolization' claim: the existence of requisite monopoly power." BA Motion to Dismiss at 7. Here again, defendant's argument is both substantively and procedurally flawed. "[M]onopoly power is an issue of fact," *Florida Fuels*, 717 F. Supp. at 1532, and as such, cannot be decided on a motion to dismiss. Monopoly power, by definition, is the power to exclude competition. *See, e.g., Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 58 (1910); *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966); *U.S. Anchor Mfg. Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993), *cert. denied*, 512 U.S. 1221 (1994).

BA attempts to refute the existence of market power by focusing solely on its share of Gatwick slots during commercially desirable hours of operation. BA Motion to Dismiss at 8. This is only one indicator of market power. "In determining whether an entity is a monopolist, a court may

consider various factors including control over price, the ability to exclude competition, [] and high barriers to entry." *Florida Fuels,* 717 F. Supp. at 152 (citations omitted).

The complaint alleges that BA has the ability to exclude competition. The complaint makes clear that "BA possesses monopoly power over the relevant market for air passenger service between Miami and London," Amend. Compl. ¶ 27, "and enjoys substantial market power therein." Amend. Compl. ¶ 10. The complaint also alleges that "BA and its co-conspirators have the power to exclude Laker, its competitor, from obtaining slots at Gatwick that are necessary to compete effectively in the Miami-London Market." Amend. Compl. ¶ 17. Furthermore, as alleged, the direct result of "[BA's] predatory, exclusionary and anticompetitive conduct" has been "to rais[e] barriers to entry and foreclos[e] effective competition in said market." Amend. Compl. ¶ 27. Similarly, "BA's refusal of access to competitive Gatwick slots has severely handicapped Laker's ability to compete in the relevant market and . . . has not only foreclosed Laker from effective competition, but has suppressed competition generally in the relevant market." Amend. Compl. ¶ 31. Finally, BA' conspiratorial conduct "has, in fact, enhanced BA's considerable market power in said market and has suppressed competition therein." Amend. Compl. ¶ 25. Laker's allegations regarding monopoly power are more than adequate to survive

12

dismissal. *See Vernon v. Medical Mgt. Assoc. of Margate, Inc.,* 912 F. Supp. 1549, 1553 (S.D. Fla. 1996) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint.").


In sum, Laker's Complaint alleges that BA has a dominant position at Gatwick as the principal provider of flights between Gatwick and points in Europe and beyond. The Complaint well-pleads BA's refusal to enable Laker's passengers to access those flights with a single ticket issued by Laker, a through baggage check and on a joint fare with a reasonable division of the price paid, thereby effectively excluding Laker from the market.


III. Laker Alleges Harm to Competition

BA concedes that the complaint sufficiently alleges injury to Laker. *See* BA' Motion to Dismiss at 9-10. BA insists, however, that because Laker "does not 'allege facts that would show an anticompetitive impact on the market as a whole,'" Laker's complaint is "'insufficient as a matter of law to establish a violation of federal antitrust law.'" *Id.* at 9 (quoting *Dial a Car, Inc. v. Transportation, Inc.,* 82 F.3d 484, 486 (D.C. Cir. 1996); *Sckuylkill Energy Resources v. PP&L,* 113 F.3d 405, 418 n.6 (3d Cir.), *cert. denied,* 118 S. Ct. 435 (Nov. 10, 1997).

13

This argument was flatly rejected in *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9" Cir. 1988), *aff'd*, 496 U.S. 543 (1990). In *Hasbrouck*, the defendants, charged with violating § 2(a) of the Robinson-Patman Act, argued that the plaintiff "failed to prove that the price discrimination resulted in injury to competition and instead presented evidence reflecting only injury to themselves as competitors." *Id.* at 1040. Like BA, the defendants in *Hasbrouck* relied heavily on the notion that "the antitrust laws were enacted for the protection of competition, not competitors." *See* BA Motion to Dismiss at 9 (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990)).

On appeal, the Ninth Circuit rejected this argument, reasoning:

> The oft-quoted chestnut distinguishing between protecting competition and protecting competitors has been misconstrued with some regularity by antitrust defendants who appear to argue in all types of antitrust cases that the effect of unlawful conduct on competitors is irrelevant. The purpose of drawing a distinction between harm to competition and harm to competitors is to point out that not all acts that harm competitors harm competition. However, the converse is *not* true. Injury to competition necessarily entails injury to at least some competitors. . . . Clearly, injury to competitors may be probative of harm to competition.

*Hasbrouck*, 842 F.2d at 1040, underscoring added.

The Ninth Circuit's reasoning applies fully here. Indeed, "[t]he aphorism [that antitrust laws protect competition, not competitors] may not be invoked blindly in response to a showing that [Laker has] been harmed; otherwise it [serves] to shield unlawful conduct that adversely affects competition." *id.*

Moreover, Laker's complaint clearly does allege injury to competition and to consumer welfare. Laker's complaint clearly alleges "that BA's activity will significantly restrict competition in the product's marketplace." BA Motion to Dismiss at 9 (citing *Anthony Distribs., Inc. v. Miller Brewing Co.*, 882 F. Supp. 1024, 1030 (M.D. Fla. 1995)). Indeed, as Laker repeatedly alleges, BA's conspiratorial conduct "has, in fact, *unreasonably restrained competition in said market to the detriment of not only Laker but the consuming public generally*, and will continue to do so unless and until enjoined by this court." Amend. Compl. ¶¶ 23, 25, 27 (emphasis added). Similarly, paragraph 26 of Laker's complaint makes clear that "BA is engaged in predatory, exclusionary and anticompetitive conduct with the purpose and *effect of raising barriers to entry and foreclosing effective competition* in said market." Amend. Compl. ¶ 27 (emphasis added).

Assuming these allegations are true, as the Court must on a motion to dismiss, Laker's complaint more than satisfies the low threshold for surviving

dismissal. *Nussbaum v. Mortgage Serv. Am. Co.*, 913 F. Supp. 1548, 1553 (S.D. Fla. 1995) ("[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low.").

## IV.    The Complaint Should Not Be Dismissed for Forum Non Conveniens

The Southern District of Florida is the proper forum. Laker has its principal place of business in this District and it is where the injury occurred. The ultimate inquiry regarding choice of forum is where a trial will best serve the convenience of the parties and the ends of justice. *Koster v. Lumbermens Mut. Ca. Co.*, 330 U.S. 518, 527 (1947). The court must balance the private and public interest factors when determining whether a forum is proper. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947). The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (*citing Hoell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981). BA presents no compelling reason for a forum transfer.

## V.    Laker's State Law Claims

BA does not challenge Count V of its Amended Complaint which pleads violation of the Florida Antitrust Act, Fla. Stat. § 542.18. BA's misdirects its attack on Laker's state law claims by incorrectly portraying

Laker's claims as based on allegations of deception by BA.  Laker's state law

claims are not based on deception; they are based on an alleged combination

and conspiracy to restrain trade and commerce in the relevant market and on

unfair methods of competition which suppressed competition in the relevant

market.  Amend. Compl. ¶¶ 32-36.  See *Klinger v. Weekly World News, Inc.*,

747 F. Supp. 1477, 1479 (S.D. Fla. 1990).


BA also misdirects itself by arguing preemption based on *Morales v.

TWA*, 504 U.S. 374, 384 (1992), and *American Airlines, Inc. v. Wolens*,

513 U.S. 219, 227-28 (1995).  *Morales* involved false fare advertising, an

issue clearly related to airline "rates", and *Wolens* involved an airline frequent

flyer program, an issue clearly related to "services" as described in the Airline

Deregulation Act, 49 U.S.C. § 1305(a).  Neither case involves state antitrust

laws or suppression of competition in the relevant market.


BA ignores the controlling guidance on preemption from the U.S. Court

of Appeals for the 11th Circuit in *Parise v. Delta Airlines, Inc., 141 F.3d 1463

(11th Cir. 1998)* (former airline employee's state law age discrimination claim

not federally preempted by the Airline Deregulation Act).  The Court of

Appeals directed the following analysis: (1) Preemption is appropriate only if

it is the clear and manifest purpose of Congress to preempt Florida's antitrust

and unfair practices laws.  (2) The courts should not lightly infer preemption

of actions within the traditional police powers of a state. Both of these principles point away from preemption in this case. *Cf. Martin v. Eastern Airlines, Inc.*, 630 So. 2d 1206, 1208 (Fla. Dist. Ct. App. 1994) (common law negligence actions against airlines not preempted).

### CONCLUSION

For all of the foregoing reasons, Laker respectfully requests the Court to deny BA's motion to dismiss.

Respectfully submitted,

Robert M. Beckman
Bode & Beckman, L.L.P.
1150 Connecticut Avenue, N.W.
9th Floor
Washington, D.C. 20036-4192
Tel: 202-828-4100
Fax: 202-835-3219

Dwight Sullivan
(Florida Bar No. 079214)
14 Northeast First Avenue
Suite 1205
Miami, Florida 33132
Tel: 305-358-5544
Fax: 305-358-1614

Of counsel:

Robert A. Skitol
Kathleen S. O'Neill
Drinker Biddle & Reath, L.L.P.
1500 K Street, N.W.
Suite 1100
Washington, D.C. 20005
Tel: 202-842-8800
Fax: 202-842-8465

By: _____
Dwight Sullivan
Attorneys for Plaintiff,
   Laker Airways Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of November, 1999, a copy of Plaintiff's Opposition to Defendant British Airways' Motion to Dismiss was served by fax (Fort Lauderdale fax number 954-765-1477) and by US mail, postage prepaid upon Richard G. Garrett, Greenberg, Taurig, Hoffman, Lipoff Rossen & Quentel, P.A. 1221 Brickell Avenue, Miami, Florida 33131 and by fax (number 202-293-6330) postage prepaid to Daryl A. Libow, Esq., 1701 Pennsylvania Avenue, N.W. Washington, D.C. 2000-2498

Dwight Sullivan