UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 97-6766-Civ (Ferguson/Snow)

LAKER AIRWAYS INC..          )
                             )
          Plaintiff.         )
                             )
     v.                      )
                             )
                             )
BRITISH AIRWAYS PLC,         )
                             )
          Defendant.         )
                             )
_____      )

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
BRITISH AIRWAYS PLC'S MOTION TO DISMISS THE COMPLAINT

SULLIVAN & CROMWELL
1701 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20006
(202) 956-7500

GREENBERG TRAURIG, P.A.
515 EAST LAS OLAS BOULEVARD
FORT LAUDERDALE, FLORIDA 33302
(954) 765-0500

Attorneys for Defendant
British Airways Plc

John L. Warden
Daryl A. Libow
Joseph J. Matelis

Richard G. Garrett

Of Counsel

November 12, 1999

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      BRITISH AIRWAYS HAS NO OBLIGATION TO
        INTERLINE WITH LAKER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     BECAUSE THE COMPLAINT ALLEGES HARM ONLY
        TO LAKER, THE REMAINING ANTITRUST
        CLAIM IS DEFICIENT AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . 8

III.    LAKER'S INTERLINING CLAIM SHOULD
        BE DISMISSED ON GROUNDS OF
        FORUM NOR CONVENIENS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     LAKER HAS FAILED TO STATE A CLAIM
        UNDER FLORIDA LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

CASES

*Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414 (11th Cir. 1990) . . . . . . . . . . . 9

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991) . . . . . . . 6

*American Airlines v. Wolens*, 513 U.S. 719 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569 (11th Cir. 1985) . . . . . . . . . . . 8

*Anthony Distribs., Inc. v. Miller Brewing Co.*, 882 F. Supp. 1024 (M.D. Fla. 1995) . . . . 9

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) . . . . . . 2, 3, 4, 8

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 n.8 (1990) . . . . . . . . . 10

*Austin v. McNariana*, 979 F.2d 728 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1046, 1413
(7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bus Top Shelters, Inc. v. Convenience & Safety Corp.*, 521
F. Supp. 989 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) . . . . . . . . . . . . . 4, 6

*Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653 (9th Cir. 1997) . . . . . . . . . . . . . . . 9

*Davis v. Southern Bell Tel. & Tel. Co.*, 1994-1 Trade Cas. (CCH) ¶ 70,510
(S.D. Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Florida Fuels, Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528 (S.D. Fla. 1989) . . . . . . . 5, 6, 8

*Florida Monument Builders v. All Faiths Mem'l Gardens*, 605 F. Supp. 1320 . . . . . . . . 9

*Gas Utils. Co. v. Southern Natural Gas Co.*, 825 F. Supp. 1551
(N.D. Ala. 1992), *aff'd*, 996 F.2d 282 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 8

*International Audiotext Network v. AT&T*, 893 F. Supp. 1207
(S.D.N.Y. 1994), *aff'd*, 62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7

*Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250 (S.D.N.Y. 1995) . . . . . . . . . . . 5, 8

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990) . . . . . . . . 11

*Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996) . . . . . . . . . . . . 10

*McGahee v. Northern Propane Gas Co.*, 818 F.2d 1487 (11th Cir. 1988) . . . . . . . . . . . 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) . . . . . . . . . . . . . . . . . . . . 2

*Olympia Equip. Leasing Co. v. Western Union Telegraph Co.*,
797 F.2d 370 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parise v. Delta Airlines, Inc.*, 141 F.3d 1463 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 11

*SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . 3

*Sibaja v. Dow Chem. Co.*, 757 F.2d 1215 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 10

*Twin Lab. v. Weider Health & Fitness*, 900 F.2d 566 (2d Cir. 1990) . . . . . . . . . . . . . . . 7

*U.S. Anchor Mfg. v. Rule Indus., Inc.*, 7 F.3d 986 (11th Cir. 1993) . . . . . . . . . . . . . . . . 5

*USFL v. NFL*, 842 F.2d 1335 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Valet Apt. Servs. v. Atlanta Joun. & Const.*, 865 F. Supp 828
(N.D. Ga. 1994), *aff'd*, 50 F.3d 1039 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 7

*Virgin Atl. Airways, Ltd. v. British Airways, Plc.*, 872 F. Supp. 56
(S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Volmar Distrib., Inc. v. New York Post*, 825 F. Supp. 1153 (S.D.N.Y. 1993) . . . . . . . . 10

TREATISE

*Philip Areeda & Herbert Hovencamp, Antitrust Law* (1996) . . . . . . . . . . . . . . . . . 3, 4, 5

RULES

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Fed. R. Civ. P. 41(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 60(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 97-6766-Civ (Ferguson/Snow)


| | | |
|---|---|---|
| LAKER AIRWAYS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Reply Memorandum in Support |
| | ) | of Defendant British Airways Plc's |
| BRITISH AIRWAYS PLC, | ) | Motion To Dismiss the Complaint |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |


PRELIMINARY STATEMENT


Plaintiff Laker Airways Inc.'s ("Laker") memorandum in opposition to British Airways Plc's ("British Airways") motion to dismiss Laker's sole remaining claim is an exercise in wishful thinking.  Astoundingly, Laker wants to pretend that the Eleventh Circuit did not in fact affirm dismissal of *all* of Laker's claims save for one claim relating to British Airways alleged unilateral refusal to enter into an "interline" agreement on terms dictated by Laker.  Instead Laker chides British Airways for filing a motion "limited to the interline claim" (Laker Mem. at 1) and has the audacity to assert that "Laker is entitled to have its slot allocation and interline claims reviewed together as both allegations are components of the alleged antitrust conspiracy." (*Id.*)  First, no matter how hard Laker wishes to the contrary, Laker no longer has slot allocation claims.

Second, neither the complaint nor Laker's improperly and untimely filed "amended complaint" suggest anything other than that British Airways acted unilaterally in allegedly refusing to interline with Laker, so there no longer exists a "conspiracy" claim. Thus, Laker is left only with its Section 2 monopolization claim relating to interlining, and to avoid dismissal of this claim, Laker's memorandum equally distorts controlling legal authority and ignores the factual allegations of its own complaint.

ARGUMENT

1.   BRITISH AIRWAYS HAS NO OBLIGATION<br>TO INTERLINE WITH LAKER.

While acknowledging the general rule established in *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984), that even a monopolist has no duty to deal with its competitors, Laker nonetheless entreats this Court to ignore that rule and vainly argues that *Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), and the so-called "essential facilities" doctrine, compel British Airways to interline with Laker on whatever terms Laker desires. *Aspen Skiing*, of course, supports no such duty and Laker's repeated assertions that this case is "strikingly" analogous and "closely resembles" *Aspen Skiing* (Laker Mem. at 8, 9), are patently false.

First, Laker's complaint does not allege that British Airways terminated an existing interline agreement. Consequently, even if the complaint did sufficiently allege the existence of monopoly power — which it does not (*see infra* at 5-6) — the extraordinary duties placed upon the defendant in *Aspen Skiing* are not triggered:

> [T]he facts [in *Aspen Skiing*] found antitrust significance
> only in the defendant's abandonment of a joint venture

-2-

> initially entered voluntarily. The Court did not impose a
> prospective duty to deal where no such dealing had
> occurred previously, and there is no reason for thinking it
> would have done so.

IIIA Phillip E. Areeda and Herbert Kovenkamp, *Antitrust Law* ¶ 772c3, at 193 (rev. ed.

1996) (hereinafter "Antitrust Law"). *See also SCFC ILC, Inc.* v. *Visa USA, Inc.*, 36 F.3d

958, 971 (10th Cir. 1994) (*Aspen Skiing* applicable only to monopolist's decision "to

make important change in market" by refusing to deal with prior partner); *Olympia*

*Equip. Leasing Co.* v. *Western Union Telegraph Co.*, 797 F.2d 370, 376-77 (7th Cir.

1986) (*Aspen Skiing* imposes no "affirmative duty" to provide new assistance). Unless

plaintiff pleads specific facts triggering the exception to the general rule permitting

unilateral conduct, a motion to dismiss should be granted. *Valet Apt. Servs.* v. *Atlanta*

*Journal & Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994), *aff'd*, 50 F.3d 1039 (11th

Cir. 1995); *International Audiotext Network* v. *AT&T*, 893 F. Supp. 1207, 1221

(S.D.N.Y. 1994), *aff'd*, 62 F.3d 69 (2d Cir. 1995).

      *Aspen Skiing* is, moreover, inapposite for two additional reasons. First, as

both Laker's proposed amended complaint ("Am. Compl." ¶¶ 11, 20) and Laker's

Response to British Airways' Motion to Strike (Resp. Mot. Strike at 7 n.2) indicate,

British Airways did offer to interline with Laker, but Laker rejected the terms offered by

British Airways.[1]   *Aspen Skiing* "does not consider or define the terms on which dealing

---

[1]     Shockingly, Laker suggests that British Airways has "misrepresent[ed]" that
British Airways offered to interline with Laker if Laker would provide a bank guarantee.
Resp. Mot. Dismiss at 7 n.2. Laker's counsel himself acknowledged to this Court that
such an offer had been made. *See* Mot. Dismiss Annex A at 22.

-3-

might take place" and "[i]t certainly does not hold that a monopolist must make its goods, services, or facilities available at a competitive rather than a monopolistic price." *Antitrust Law* ¶ 772c2, at 192.

Second, Laker's complaint fails to allege that British Airways had no legitimate business reason for refusing to interline with Laker on Laker's terms; this unfounded assertion is only made in Laker's responsive memorandum of law.[2] *Aspen Skiing* "leaves monopolists free to refuse to deal or cooperate with rivals for legitimate business reasons." *Antitrust Law* ¶ 772c2, at 192, and Laker's failure to plead such an essential element of its claim warrants dismissal. *Valet Ap. Servs.*, 865 F. Supp at 833; *International Audiotext Network*, 893 F. Supp. at 1221.

Laker alternatively styles its Section 2 count as an "essential facilities" claim. (*See* Resp. Mot. Dismiss at 6 n.2.) Yet Count IV of the complaint, styled "Section 2 of the Sherman Act: Essential Facilities," exclusively relates to the allocation of slots at Gatwick, makes no mention of interlining, and has been dismissed. Moreover, even if Laker had attempted to plead an essential facilities claim with regard to interlining, such a claim would surely fail because the doctrine simply does not apply here. Employing the phrase "essential" as a talisman does not entitle Laker to some special consideration, impose any duty on British Airways, or assist Laker in stating an antitrust claim. To state an "essential facility" claim under Section 2 of the Sherman Act,

---

[2]    It is well-settled that parties may not amend their complaints through their responses to a defendant's motion to dismiss. *See, e.g., Car Carriers, Inc.* v. *Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

plaintiff access to an "essential facility" it controls. *USFL v. NFL*, 842 F.2d 1335, 1368-69 (2d Cir. 1988). Laker pleads neither element sufficiently.

First, the fundamental prerequisite to an "essential facilities" claim is a defendant's monopoly power in the relevant market. See *Florida Fuels, Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528, 1532 (S.D. Fla. 1989); *Kramer v. Pollock-Krasner*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995) ("The 'essential facilities' doctrine is not an independent cause of action, but rather a type of monopolization claim."); *Antitrust Law* ¶ 773, at 208 ("minimum condition . . . is that defendant be a monopolist"). British Airways is not, as a matter of law, a monopolist in the "Miami to London" passenger air services market because the complaint itself only ascribes to British Airways a "market" share limited to 46% of the "desirable" slots at Gatwick Airport. (Compl. ¶¶ 15, 24) See *U.S. Anchor Mfg. v. Rule Indus., Inc.*, 7 F.3d 986, 999-1001 (11th Cir. 1993) ("as a matter of law" where defendant holds less than 50% of the market, a monopoly claim cannot succeed) [3] Accordingly, even accepting that "desirable slots" at Gatwick is a relevant market — or a proper measure of market power in the "Miami to London" market — Laker fails to state an "essential facilities" claim. *Valet Apt. Servs. v. Atlanta Journal & Constitution*, 865 F.

---

[3]     In a futile attempt to avoid the Eleventh Circuit rule that the "best test from which market power may be inferred is . . . the percentage of market share," *McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1505 (11th Cir. 1988), Laker misrepresents the pre-*U.S. Anchor* district court dictum in *Florida Fuels* by excising language. In full the court stated: "In determining whether an entity is a monopolist, a court may consider various factors including control over price, the ability to exclude competition, *a market share of greater than 70-80%*, and high barriers to market entry." *Florida Fuels*, 717 F. Supp. at 1532 (emphasized language is astonishingly deleted in Laker's memorandum to the Court). *Florida Fuels* merely reflects the unexceptional principle that even *high* market share alone will not necessarily give rise to monopoly power. *See Davis v. Southern Bell Tel. & Tel. Co.*, 1994-1 Trade Cas. (CCH) ¶ 70,510 (S.D. Fla. 1994).

Accordingly, even accepting that "desirable slots" at Gatwick is a relevant market — or a proper measure of market power in the "Miami to London" market — Laker fails to state an "essential facilities" claim. *Valet Apt. Servs.* v. *Atlanta Journal & Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994) (holding that complaint failed to state an essential facilities claim because "plaintiffs ha[d] not alleged facts that could show that any defendant [was] a monopolist"), *aff'd*, 50 F.3d 1039 (11th Cir. 1995). Laker simply has alleged no *facts* that, even if true, demonstrate the existence of monopoly power.[4]

Second, the allegation that interlining with British Airways constitutes an essential facility fails as a matter of law. "A facility . . . will be considered 'essential' only if control of the facility carries with it the power to *eliminate* competition in [plaintiff's] market." *Alaska Airlines, Inc.* v. *United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991). "As the word essential indicates, a plaintiff must show more than inconvenience, or even some economic loss." *Twin Lab.* v. *Weider Health & Fitness*, 900 F.2d 566, 570 (2d Cir. 1990). To survive a motion to dismiss, a claimant must plead facts "to show why" access cannot be obtained from other sources. *Valet Apt. Servs.* v. *Atlanta Journal & Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994) (dismissing "essential facility" claim that failed to allege facts indicating why other media outlets could not provide alternative "facility"), *aff'd*, 50 F.3d 1039 (11th Cir. 1995); *International Audiotext Network* v. *AT&T*, 893 F. Supp. 1207, 1221 (S.D.N.Y. 1994)

---

[4]     Laker's generic and conclusory allegations that British Airways "possesses monopoly power," "substantial market power," "the power to exclude" or "rais[es] barriers to entry" (Resp. Mot. Dismiss at 11), do not suffice to state a claim. *Car Carriers, Inc.*, 745 F.2d at 1106 & n.5.

(dismissing "essential facility" claim because plaintiff "has alleged no facts — as opposed to conclusions — from which it can be inferred that none of the [ ] alternatives [identified by defendant] are infeasible"). *aff'd*. 62 F.3d 69 (2d Cir. 1995).

The "facility" that Laker apparently deems "essential" is interlining with British Airways' in order to access "points beyond London." (Compl. ¶ 19.) Yet the complaint does not aver that British Airways' alleged refusal to interline precludes Laker from the "Miami to London" market that British Airways is alleged to have monopolized, but instead to unspecified "points beyond," for which there is no suggestion of unlawful monopolization. Moreover, even if it were accurate that the absence of an interline agreement with British Airways inconveniences Laker's customers seeking to access other destinations from Gatwick on connecting British Airways flights, there is simply no allegation in the complaint that British Airways is the sole means by which such customers can access "points beyond London." Indeed, to the contrary, Laker's complaint acknowledges that more than one hundred other airlines (Comp. ¶ 15) could provide Laker interline opportunities. *Kramer* v. *Pollock-Krasner Found*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995) (essential facility claim dismissed pursuant to Rule 12(b)(6) if plaintiff concedes alternative means of access); *Gas Utils. Co.* v. *Southern Natural Gas Co.*, 825 F. Supp. 1551, 1574 (N.D. Ala. 1992) (essential facilities claim dismissed where plaintiff could have negotiated with other entities to allow it access), *aff'd*, 996 F.2d 282 (11th Cir. 1993). Finally, the very authority upon which Laker relies provides, consistent with *Aspen Skiing*, that the essential facilities doctrine is inapplicable to "facilities" with

-7-

which an alleged monopolist and a competitor have had "no prior history of dealing."

*Florida Fuels, Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528, 1536 (S.D. Fla. 1989).

II.   BECAUSE THE COMPLAINT ALLEGES HARM ONLY
TO LAKER, THE REMAINING ANTITRUST
CLAIM IS DEFICIENT AS A MATTER OF LAW.

Laker's Section 2 claim relating to interlining is fundamentally flawed

because Laker has failed to plead "[h]arm to competition" which is a "necessary element

of all private antitrust suits under Sections 1 and 2 of the Sherman Act." *American Key*

*Corp.* v. *Cole Nat'l Corp.*, 762 F.2d 1569, 1579 n.8 (11th Cir. 1985).  Although

implicitly acknowledging that its complaint concerns nothing more than purported

restrictions on its own commercial performance, Laker remarkably invokes *Hasbrouck* v.

*Texaco, Inc.*, 842 F.2d 1034, 1040 (9th Cir. 1987), to "support" its contention that a

plaintiff need not do more.  (Resp. Mot. Dismiss at 13-14.)

*Hasbrouck*, however, is a Robinson-Patman Act ("RPA") case concerning

*only* price discrimination claims.  In the unique context of RPA price discrimination

cases, the Supreme Court has held that "competitive injury . . . may be inferred from

evidence of harm to an individual competitor." *Chroma Lighting* v. *GTE Prods. Corp.*,

111 F.3d 653, 657 (9th Cir. 1997).  The "gist of these cases, representing about a half-

century of RPA interpretation, is that the legal focus of the competitive injury inquiry is

on the competitor, *not the consumer*." *Alan's of Atlanta, Inc.* v. *Minolta Corp.*, 903 F.2d

1414, 1418 n.6 (11th Cir. 1990) (emphasis added).  *Sherman Act* claims, in contrast,

require a plaintiff to plead allegations of harm to the market *transcending* injury to the

plaintiff-competitor.  *Florida Monument Builders* v. *All Faiths Mem'l Gardens*, 605 F.

-8-

*Miller Brewing Co.*, 882 F. Supp. 1024, 1030 (M.D. Fla. 1995) ("[M]ere injury to oneself as a competitor is insufficient" to state a claim).[5]

Laker does not plead facts demonstrating market injury. It seeks refuge in wholly conclusory assertions that the defendant has "restrained competition in said market to the detriment of not only Laker but the consuming public generally" and "is engaged in predatory, exclusionary and anticompetitive conduct with the purpose and effect of raising barriers to entry and foreclosing effective competition" (Compl. ¶¶ 22, 24, 26, 30). It is elementary that a complaint does not state a claim "by [asserting] broad allegations of harm to the 'market' as an abstract entity." *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 n.8 (1990). Complaints based on such allegations are regularly dismissed.[6]

---

[5]    Indeed, the Ninth Circuit post-*Hasbrouck* has reaffirmed that allegations regarding a plaintiff's injury do not relate to harm to competition. *Austin* v. *McNamara*, 979 F.2d 728, 739 (9th Cir. 1992) ("injury to competition *beyond the impact on the claimant*" required in Sherman Act cases).

[6]    *See, e.g., Volmar Distribs., Inc.* v. *New York Post Co.*, 825 F. Supp. 1153, 1160 (S.D.N.Y. 1993) (dismissing complaint alleging "defendants' conduct" "designed to drive plaintiffs out of the relevant market" plus "naked assertion that consumers and retailers" "have been and will be deprived of the benefits of competition by defendants' actions"); *BusTop Shelters, Inc.* v. *Convenience & Safety Corp.*, 521 F. Supp. 989, 997 (S.D.N.Y. 1981) (complaint alleging that "competition in the bus shelter market has been eliminated and destroyed" fails "to allege injury to competition adequately.").

### III.   LAKER'S INTERLINING CLAIM SHOULD
### BE DISMISSED ON GROUNDS OF
### FORUM NON CONVENIENS

Laker asserts that Florida is the most appropriate forum for resolution of

its remaining interlining claim because British Airways "presents no compelling reason

for a forum transfer." (Resp. Mot. Dismiss at 15.) To the contrary, British Airways noted

in its moving papers that Laker's remaining interlining claim concerns only passengers

transferring flights within London's Gatwick Airport to "points beyond London" (Compl.

¶ 19) and that, consequently, the connection between this dispute and Florida is so slight

as to justify invocation of the forum non conveniens doctrine. *Magnin* v. *Teledyne*

*Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Sibaja* v. *Dow Chem. Co.*, 757

F.2d 1215, 1217 n.5 (11th Cir. 1985) (doctrine applicable where claim required local

jurors "to hear claim and decide dispute that has no connection with this community").


### IV.   LAKER HAS FAILED TO STATE
### A CLAIM UNDER FLORIDA LAW

Laker first seems to suggest that its Count V, which involves violations of

Section 542.18 of the Florida Antitrust Act, remains at issue in the case. (Resp. Mot.

Dismiss at 15.) However, as British Airways noted in its Motion to Dismiss (Mot.

Dismiss at 5 n.2), the Eleventh Circuit's affirmance of the dismissal of Laker's non-

interlining claims encompassed dismissal of Count V, which involves an alleged

conspiracy between ACL and British Airways with respect to the allocation of slots.

ACL has no connection to Laker's remaining interline claim and thus no combination or

-10-

conspiracy is involved.  Laker offers no support for its Florida Deceptive and Unfair

Trade Practices Act claim (Count VI), which is plainly frivolous because that statute

"does not apply to suits between competitors." *M.G.B. Homes, Inc.* v. *Ameron Homes,*

*Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990).

       Moreover, the Airline Deregulation Act (ADA), 49 U.S.C. § 1305(a),

preempts these state-law claims.  *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463 (11th Cir.

1998), relied upon by Laker in an attempt to avoid preemption, actually supports

displacement of the Florida statutes at issue.  In *Parise*, the Eleventh Circuit concluded

that the ADA did not preempt a state-law employment discrimination claim,

notwithstanding that the airline raised airline safety concerns (the claimant allegedly

threatened violence against other airline employees) as an affirmative defense justifying

the employee's discharge.  Noting that the complaint itself did not raise airline safety

concerns but that it was the "answer to the complaint that appears to provide the asserted

ground for preemption," the court found preemption inappropriate because "it is the cause

of action and the underlying state law on which it is founded" that control the preemption

analysis.  141 F.3d at 1466.

       In this dispute, however, Laker's complaint and the underlying state law

directly draw into question British Airways' "rates, routes, [and] services."  *Id.*  Laker's

remaining claim directly challenges a "service" provided by British Airways —

interlining.  Moreover, Laker's antitrust claim hinges on the allegation that British

Airways is a monopolist, thereby necessarily challenging the "rates" and "routes" offered

by British Airways.  Laker's state law claims are therefore preempted. *See American*

*Airlines v. Wolens*, 513 U.S. 219, 227-28 (1995); *Virgin Atlantic Airways Ltd. v. British Airways Plc.* 872 F. Supp. 52, 66-67 (S.D.N.Y. 1995) (state law tort and unfair competition claims "based on same facts as alleged in federal antitrust claims" preempted).

CONCLUSION

For the foregoing reasons and the reasons set forth in British Airways

Motion To Dismiss, the Court should dismiss the remainder of the Complaint.

Respectfully submitted,

Daryl A. Libow
Sullivan & Cromwell
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
phone: (202) 956-7500
fax: (202) 293-6330
email: LibowD@SullCrom.com

Richard G. Garrett
(Florida Bar No. 268161)
Greenberg Traurig, P.A.
515 East Las Olas Blvd.
Fort Lauderdale, Florida 33302
phone: (954) 765-0500
fax: (954) 765-1477
email: GarrettR@GTlaw.com

John L. Warden
Joseph J. Matelis

Of Counsel

November 12, 1999

Attorneys for Defendant
British Airways Plc

-13-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Reply Memorandum in Support of Defendant British Airways PLC's Motion to Dismiss the Complaint was sent via facsimile and Federal Express to Robert M. Beckman, Esq., BODE & BECKMAN, L.L.P., 1150 Connecticut Avenue, N.W., 9th Floor, Washington, D.C. 20036-4192 and via facsimile and U. S. Mail to Dwight Sullivan, Esq., 14 Northeast First Avenue, Suite 1205, Miami, FL 33132 this 12th day of November, 1999.

MICHAEL J. ROGAL
FBN # 0041645

MIAMI3 GARRETTR 117503 2$nz01!.DOC 11 12 99

–14–